362 P.2d 581

**Charles V. SMITH, Plaintiff and Respondent,**

v.

**John W. TURNER, Warden of Utah State Prison, Defendant and Appellant.**

No. 9423.

Supreme Court of Utah.

June 5, 1961.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Vernon B. Romney, Asst. Atty. Gen., for appellant.

Earl M. Wunderli, Lester R. Gardiner, Jr., Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from an order granting a petition for writ of habeas corpus where cruel and unusual punishment was urged, unless the petitioner be taken to a county hospital, given medical tests, recommendations for treatment for petitioner's psoriasis, and to provide a diet therefor and medication to be prescribed by physicians who might examine him. Reversed with instructions to vacate said order.

Two witnesses appeared, the petitioner and the prison physician. The latter was qualified as a general practitioner (by stipulation). Petitioner displayed sores and bumps on his arms and legs, constituting an ailment known as psoriasis. He testified that the prison doctor had been treating him with olive oil, which did no good, but harm; that he had been treated with oil before he entered the prison some three years prior thereto; that the prison doctor prescribed daily baths, which took about 30 minutes each day before he was confined in a security area, after which he was allowed a 20-minute period; that the prison doctor also had treated him with lanolin; that although petitioner had requested that he be taken to the county hospital, such request was not granted; that he is given the same diet as other prisoners; that he had been told by unnamed other doctors that a special diet would help; that he had spent two or three months in the prison hospital; that he had been placed in a security cell block for an abuse of the use of medicines given him; that he had previously been treated by about three other doctors who had him eat fresh vegetables and drink fruit juices and use a patent medicine known as "Siroil," and that he had obtained relief thereby. He offered no medical or other expert testimony to support what he said, part of which was hearsay. He admitted his recent isolation resulted from violation of prison regulations.

The prison doctor testified that it would be impossible to determine the number of times petitioner was examined during the past year because constantly he had been under care since he was admitted to the prison in 1957; that there was no known cause of psoriasis, and no known cure, but that there was speculation that sanitary, dietary or an overlay of nervous instability may be causes; that petitioner repeatedly had been in difficulty with prison authorities, at which times his skin condition would worsen; that there is no reason why the prison personnel and hospital facilities could not properly treat the petitioner for his affliction; that medication was never denied petitioner for his skin ailment, except sleeping pills and tranquilizers; that there is no reason he knows why treatment would not be as adequate

at the prison as would be treatment by other physicians in other hospitals; that all diets are not available to prisoners in the hospital; that he did not think diet had any bearing on psoriasis, but that if diet would aid he would be glad to help petitioner; that besides an opportunity to bathe during the 20-minute daily period granted, there have been also a wash basin and adequate sanitary conditions in petitioner's cell.

We do not consider the facts of this case to constitute that rare case we spoke of in Chapman v. Graham [1] that conceivably might sanction the use of the writ. We reaffirm the following language in that case which we consider worth repeating here for emphasis:

> "We are not constrained to sanction the use of this extraordinary remedy to permit him who has run afoul of the law to dictate the terms and conditions incident to the nature, extent and place of medical care to be given, * * * because one lawfully restrained opines that his physical welfare and comforts better will be served abroad. We prefer to adhere to the principle, until that rare case approaches which to date we have not encountered, that courts, by means of the writ, will not interfere with the

management, control or internal affairs, nor will they, nor can they substitute their judgment in discretionary matters for those of administrative agencies of a different department of government. In saying all these things, we are not unmindful of the principles enunciated in * * * Weems v. U. S. [2] * * * which includes the precept that in the light of progress and enlightenment, the cruel and unusual punishments of today may be deemed to include some of considerably less severity than those deemed cruel and unusual in the yesteryear."

Nothing in the record before us shows that the petitioner made any complaint of cruel and unusual punishment to the Warden or the Board of Corrections. Had an appeal been directed to the latter body, composed of seven responsible citizens appointed by the Governor,[3] presumably honest and capable, we are satisfied that a plenary inquiry would have been made and any injustice based on cruel and unusual punishment, if found to exist, would have been corrected by an appropriate order, including possibly a dismissal of the responsible party or parties. For the petitioner here to skirt the administrative process and seek the aid of the courts

1. 1954, 2 Utah 2d 156, 270 P.2d 821, 823.
2. 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793.

3. Title 64-9, Utah Code Annotated 1953.

through the device of the rarely and cautiously employed writ of habeas corpus, in a case like this, is an affront to the dignity and capability of that administrative body, who has supervision and control of not only the personnel of the state prison, but its medical and hospital facilities.

The petition's lack of merit, reflected in the evidence adduced,—and in large measure, that *not* adduced, clearly is demonstrated by a leading authority on medicine whose Third Edition,[4] published as late as 1960, in lending substance and credence to the testimony of the prison physician in this case, has the following to say:

> "*Psoriasis*, a skin disease characterized by the formation of red patches, * * * is of unknown cause, hereditary in nature, occurring at any age, affecting both sexes and all conditions of life. * * * It is common for the patient to suspect some injury or chronic irritation, either chemical or traumatic in nature, led to the development of the trouble. Increased severity of the existing disease may be ascribed to similar circumstances, and while there usually is no truth to the assertion, false claims are frequently made * * *."

4. Page 32, Sec. 187.33, in Part 6, under the heading "Administrative," Chapter 187, sub-heading "Evaluation of Injuries,"

It seems clear that the writ of habeas corpus, under established principles, does not lie under the facts of this case.

WADE, C. J., and McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.

Gray's Attorney's Textbook of Medicine, Third Edition.