Randy A. ZIEGLER, Plaintiff
and Appellant,

v.

William MILIKEN and the State of
Utah, Defendants and Respondents.

No. 15533.

Supreme Court of Utah.

July 31, 1978.

Randall T. Gaither, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Randy A. Ziegler, an inmate serving a sentence for burglary in the Utah State Prison, was placed in isolated confinement after engaging in an attempt to escape and making an assault upon a prison guard. He filed in district court a petition in habeas corpus [1] alleging cruel and unusual punishment in denying his constitutional rights of free speech, freedom of religion, and access to the library and to legal materials. Upon the basis of the representations made to the district court, it ruled that he had shown no grounds for relief, including that he had not exhausted his administrative remedies. He appeals.

In considering his contentions, it is appropriate to have in mind the purpose and the scope of habeas corpus. Though its original purpose was to test the lawfulness of the cause of one's restraint or imprisonment, or the propriety of proceedings relating thereto, it is not to be doubted that the understanding of the nature of the writ has been broadened to test other alleged violations of basic rights; [2] and that this would include cruel and unusual punishment, [3] or anything that would properly fit within that charge. [4]

Notwithstanding the foregoing, in order to state a ground for relief, it must appear from such a petition, (1) that there is some such violation of a basic right; and (2) that the petitioner has exhausted his administrative remedies, before seeking relief from the courts. [5] The reason for this is that, consistent with their obligation of exercising judicial restraint in keeping within their own function, the courts are reluctant to intrude into the operations or management of the internal affairs of the prison; [6] and will do so only in an unusual exigency where it appears that there is a likelihood that some such oppression or injustice is occurring that it would be unconscionable not to examine into the alleged grievance. [7]

Applying what has been said above to the instant case, we perceive nothing to persuade us to disagree with the views adopted by the trial court that the matters complained of by the petitioner do not bring him within the principles hereinabove stated. Neither the fact that he was placed in isolated confinement, nor the other alleged deprivations, constitute cruel or unusual punishment; and moreover, the petitioner has not exhausted his administrative remedy by applying for relief to the Warden, [8] or to the Board of Corrections, whose duty it would be to consider such complaints and put into effect any appropriate remedy. [9]

Affirmed. No costs awarded.

HALL, J., concurs.

ELLETT, Chief Justice (concurring with comment).

I agree with the main opinion and with the statement that the writ of habeas corpus has been used to inquire into matters other than the lawfulness of the restraint. That so-called broadening of the function of the writ was and is chiefly a means used by the federal courts to release criminals, and I am unalterably opposed to any such use of the writ.

1. This proceeding is brought under Rule 65B(f), U.R.C.P.

2. See 39 Am.Jur.2d, Habeas Corpus, Sec. 11, citing *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426; *Weems v. U. S.*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793.

3. Id., Amendment VIII, U.S.Const.; Art. I, Sec. 9, Utah Const.

4. That even if the petition had merit, it would not be entitled to outright discharge, see *Kuehnert v. Turner*, 28 Utah 2d 150, 499 P.2d 839.

5. *Helm v. Utah State Highway Patrol Civil Service Comm.*, Utah, 556 P.2d 210 (1976); *Smith v. Turner*, 12 Utah 2d 66, 362 P.2d 581 (1961).

6. Id., and see *Rogers v. Warden, etc.*, 84 Nev. 539, 445 P.2d 28.

7. See *Chapman v. Graham*, 2 Utah 2d 156, 270 P.2d 821; Cf. statement in *Gallegos v. Turner*, 17 Utah 2d 273, 409 P.2d 386.

8. See Sec. 64–13–10, U.C.A., 1953.

9. See Sec. 64–13–21, U.C.A., 1953.

A case in point is that of *Salt Lake City v. Piepenburg.*[1] Mr. Piepenburg was found guilty of showing a pornographic movie. His conviction has been affirmed by the courts of last resort of this state, and his trial has been determined to have been fairly conducted. Now he brings a writ of habeas corpus in the inferior federal court where he alleges that he did not have a fair trial in the city court. The federal judge set aside the lawful order of imprisonment of the state court and released the defendant pending a trial on the merits to see if he thinks the defendant is guilty or if he had a fair state trial.

Such use of the writ is an abomination in the sight of the law. It ignores the time-honored principle of law that where a matter has been decided by a court of competent jurisdiction having jurisdiction of the person, that decision is binding on all other courts under the doctrine of res judicata.

If the warden is mistreating prisoners, other writs are available, such as mandate or prohibition whereby the conduct of the officer can be corrected. Certainly the release of the felon is not the proper remedy to cure any alleged improprieties on the part of the warden.

The trial court properly denied the writ.[2]

MAUGHAN, Justice (dissenting).

For the following reasons, I dissent. The majority opinion is neither in accord with current statutory law nor the rulings of the United States Supreme Court.

Plaintiff by means of a handwritten petition sought a writ of habeas corpus. The trial court appointed counsel to represent plaintiff. The state filed a motion to dismiss. The trial court, without granting an evidentiary hearing, granted the state's motion.

The trial court observed all the matters of which plaintiff complained arose from disciplinary action, while he was confined at Utah State Prison. Plaintiff did not challenge the validity of his incarceration. The trial court cited *Chapman v. Graham,*[1] *Smith v. Turner,*[2] and *Rammell v. Smith*[3] and ruled this court was committed to the proposition the administrative processes of the prison were not subject to habeas corpus, since the prisoner had other remedies available, to wit, (1) The Board of Corrections, and (2) civil rights action under 42 U.S.C. § 1983. The trial court granted the state's motion to dismiss. All statutory references are to U.C.A. 1953, unless otherwise noted.

Plaintiff alleged in his petition he was being denied the protection of the United States Constitution; in that he was being denied due process of law, subjected to cruel and unusual punishment, denied equal protection of the law, and being placed in jeopardy three times for the same offense. He further alleged he was denied access to the courts, attorneys, and public officials and was denied religious freedom, freedom of speech, and use of the mail. He addressed two incidents in his petition with particularity.

He alleged that on the 5th day of January, 1977, he was arrested by officials of the prison for a felony charge of attempted escape. He was removed from the general inmate population and placed in maximum security, without the benefit of a hearing or a copy of a disciplinary report. Such report was not delivered to plaintiff for a period of fifteen days and was based on information, received from informants, about an attempted escape on January 3, 1977. Plaintiff asserted he was held for more than thirty days on an isolation type status, prior to his appearance before the disciplinary board. Plaintiff requested the right to present witnesses, to review the investigatory report, and to cross-examine his ac-

---

1. Utah, 571 P.2d 1299 (1977).

2. See *Rammell v. Smith*, Utah, 560 P.2d 1108 (1977); *Schad v. Turner*, 27 Utah 2d 345, 496 P.2d 263 (1972); *Brown v. Turner*, 21 Utah 2d 96, 400 P.2d 968 (1968).

1. 2 Utah 2d 156, 270 P.2d 821 (1954).

2. 12 Utah 2d 66, 362 P.2d 581 (1961).

3. Utah, 560 P.2d 1108 (1977).

cusers; all of which was denied. Plaintiff denied his guilt. He alleged he was found guilty based on information from an unknown accuser, and no evidence was presented at the hearing. He further alleged he was sentenced to fifteen days in isolation and one year in maximum security, solely upon an informer's statement.

The second incident, according to the petition, occurred on April 1, 1977, when plaintiff with eight other inmates, threw water, pepper, and soap at a prison guard. Plaintiff was found guilty of an assault and was sentenced to two fifteen day sentences in isolation. He claimed he, in fact, spent forty-two days in isolation in an area totally without ventilation. Plaintiff was further sentenced to one year in maximum security and was referred to the parole board to have his parole date rescinded. Plaintiff claims the punishment was excessive and disproportionate to the offense, and the prolonged period in isolation constituted a cruel and unusual punishment.

Is there a statutory basis to rule under Title 64, Chapt. 13, U.C.A.1953, as enacted 1977, that plaintiff has an administrative remedy by means of a hearing before the Board of Corrections?

Prior to the enactment of Chapter 13, there was a statutory basis to rule that an inmate at the state prison had an administrative remedy by means of a hearing before the Board of Corrections concerning his treatment, status, or discipline. 64–9–2 vested the government and control of the state prison in the board of corrections. This board was empowered to make and enforce all the general rules for the government and discipline of the prison. 64–9–12 provided the warden was to make a memorandum of every infraction of the rules and regulations by a prisoner, specifying the offense and the punishment. This memorandum was to be submitted to the board at every regular meeting. 64–9–24 provided the board meet at the prison monthly, or more often, as the proper control and management of its affairs required. Under 64–9–25 this board had the duty to classify

prisoners into three grades. The board further had the duty at its regular meetings to inquire into all matters connected with the government, discipline, and policy at the prison; and the punishment and employment of the convicts. The board had the power to issue subpoenas, to compel attendance of witnesses, and to examine witnesses under oath, administered by the chairman on the board, or some other member in his absence. In 1977, Chapter 9, Title 64 was repealed.[4]

Chapter 13, Title 64 replaced Chapter 9, Title 64. The new enactment radically changes the role of the board of corrections; its major function is to formulate policy for the division of corrections, Sec. 64–13–2, and to participate in the appointment of certain key personnel, Secs. 64–13–6, 8. The administration and operation of the prison is conferred on the division of corrections, Sec. 64–13–7, a subdivision of the department of social services, Sec. 64–13–5. Significantly, the defendant in this action is the chief executive and administrative officer of the division of corrections. The warden, under Sec. 64–13–8, is the chief executive and administrative officer of the prison, he is appointed by the director with the approval of the board. The warden superintends the inquiry and processing of complaints by inmates, Sec. 64–13–10(10) and has the express power to transfer an inmate from one custody level to another, Sec. 64–13–11.

Section 64–13–21, provides:

The warden upon request shall submit reports to the division informative of the business, management, and property of the prison, and the condition, conduct and employment of inmates. The board may require the director to submit such reports to it for review. Such reports shall be submitted at least once annually.

There appears from this statute no basis to rule the Board of Corrections may sit as an administrative tribunal to review the disciplinary proceedings conducted under the superintendence of the warden. This

---

4. Laws of Utah 1977, Ch. 253, Section 30.

conclusion is further sustained by a provision in Sec. 64–13–2:

. . . Except as otherwise provided in this chapter, whenever reference is made in Title 64, or in any other state statute, to the present board of corrections, it shall be construed as referring to the board where the reference pertains to the policy-making functions, powers, duties, rights, or responsibilities; in all other instances it shall be construed as referring to the division of corrections.

According to plaintiff's pleadings, the conditions of his confinement were altered by the action of the disciplinary board as a means of punishment for improper conduct. A survey of Chapter 13, Title 64 indicates no statutory basis providing for administrative review of the action of the disciplinary board. It would appear he either has exhausted his administrative remedy, or he has none to exhaust. In my view, a hearing is required to determine what has occurred.

Is a habeas corpus proceeding appropriate in this case?

Rule 65B(f), U.R.C.P. provides:

Appropriate relief by habeas corpus proceedings shall be granted whenever it appears to the proper court that any person is unjustly imprisoned or otherwise restrained of his *liberty.* . . . [Emphasis supplied.]

In *Bryant v. Turner*[5] this court stated the writ of habeas corpus was to be used where the requirements of the law had been so ignored or distorted the party was substantially and effectively denied what is included in the term due process of law.

In *Wolff v. McDonnell,*[6] the court ruled the interest of prisoners in serious disciplinary procedures is included in the "liberty" protected by the Due Process Clause of the Fourteenth Amendment. The court acknowledged, however, prison disciplinary proceeding is not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceeding does not apply.

The court stated:

. . . the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. . . .

In footnote 19[7] the court explained it would be difficult for purposes of procedural due process to distinguish between the procedures which are required where good time is forfeited and those which must be extended when solitary confinement is at issue. ". . . The latter represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. Here, as in the case of good time, there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction. . . ." The court admonished that such procedures are not required for the imposition of lesser penalties such as the loss of privileges.

The court ruled the prisoner must have advanced written notice of the claimed violation so he might have a chance to marshal the facts in his defense and to clarify what, in fact, the charges are. This notice should be given no less than 24 hours before the inmate is to appear for the hearing. Secondly, there must be a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action taken. A written record is necessary to protect the inmate against collateral consequences based on a misunderstanding of the original proceeding. If

---

**5.** 19 Utah 2d 284, 431 P.2d 121 (1967).

**6.** 418 U.S. 539, 556–557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

**7.** At 418 U.S. 571, 94 S.Ct. 2963.

there be an occasion when personal or institutional safety is so implicated, the statement may exclude certain items of evidence but such fact of omission should be indicated.

The inmate should be allowed to call witnesses and present documentary evidence in his defense, if so doing, will not be unduly hazardous to institutional safety or correctional goals. The court stated:

. . . Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to lim't access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases . . [8]

The court refused to impose, as a Constitutional requirement, the right of confrontation and cross-examination and preferred to leave these matters, at that time, to the sound discretion of the officials of the prison. The court expressed the opinion these rights presented greater hazards to institutional interests. The court further held they were not prepared at that time to hold inmates had a right to either retained or appointed counsel in disciplinary proceedings. The court qualified its ruling by stating:

Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if

that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff . . .[9]

The court concluded the procedures, which they had ruled were required in prison disciplinary proceedings, represented a reasonable accommodation between the interests of the inmates and the needs of the institution.[10]

Plaintiff herein has alleged a major change in the conditions of his confinement and as a collateral consequence of the disciplinary procedures taken against him the possible rescission of his parole date, these are sanctions for major misconduct; plaintiff had a sufficient interest to be entitled to procedural due process as set forth in *Wolff.* A petition of habeas corpus provides an appropriate remedy to review the mode or conditions of confinement in a penal institution.[11] The case should be reversed and remanded to the district court for an evidentiary hearing to determine whether plaintiff's rights have been violated.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

---

**8.** 418 U.S. 566, 94 S.Ct. 2980.

**9.** 418 U.S. 570, 94 S.Ct. 2982.

**10.** See *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) wherein the court reaffirmed its rulings in *Wolff v. McDonnell.*

**11.** *Hamrick v. Hazelet,* 209 Kan. 383, 497 P.2d 273 (1972); *Bekins v. Cupp,* Ore., 545 P.2d 861 (1976); *Calkins v. May,* 97 Idaho 402, 545 P.2d 1008 (1976).