296 S.E.2d 855

**Kim HICKSON and Verlon Jones**

v.

**Dotty KELLISON, Sheriff of Pocahontas County, et al.**

No. 15533.

Supreme Court of Appeals of West Virginia.

Oct. 15, 1982.

---

Daniel F. Hedges, Charleston, for petitioners.

J. Steven Hunter, Pros. Atty., Marlinton, for respondents.

MILLER, Chief Justice:

The petitioners, Kim Hickson and Verlon Jones, who are presently inmates in the Pocahontas County Jail bring this original mandamus action against the Pocahontas County Sheriff and County Commissioners seeking improvement of the current conditions at the Pocahontas County Jail which they contend violate their constitutional and statutory rights. The respondents in their answer admit a number of factual allegations contained in the petition but in some instances question whether they are under any obligation to furnish the services requested. Several depositions were taken in connection with the proceeding which demonstrate to us that the areas of factual dispute are rather narrow. Consequently, it appears that the main issue to be resolved is a legal one which may be generally stated: What constitutional and statutory rights govern conditions in a local jail?

We first treat this legal issue and then proceed to apply the law to the particular claims made by the petitioners.

## I.

## THE CONSTITUTIONAL PRINCIPLES AND STATUTORY GROUNDS

We begin by observing that we have entertained petitions for writs of habeas corpus and mandamus where inmates were claiming that the conditions of their confinement amounted to cruel and unusual punishment. *E.g., Harrah v. Leverette,* 165 W.Va. 665, 271 S.E.2d 322 (1980); *State ex rel. K.W. v. Werner,* 161 W.Va. 192, 242 S.E.2d 907 (1978); *State ex rel. Pingley v. Coiner,* 155 W.Va. 591, 186 S.E.2d 220 (1972). In Syllabus Point 1 of *State ex rel. K.W. v. Werner, supra,* we said:

"'Habeas corpus lies to secure relief from conditions of imprisonment which constitute cruel and unusual punishment in violation of the provisions of Article

III, Section 5, of the Constitution of West Virginia and of the Eighth Amendment to the Constitution of the United States.' Syllabus point 1, *State ex rel. Pingley v. Coiner*, W.Va., 155 W.Va. 591, 186 S.E.2d 220 (1972)."

We have also held as have numerous other courts that an action under 42 U.S.C.A. § 1983 could be filed in our State courts to challenge the conditions of jail or prison confinement. *Rissler v. Giardina*, W.Va., 289 S.E.2d 180 (1982); *Mitchem v. Melton*, 167 W.Va. 21, 277 S.E.2d 895 (1981).

Perhaps the pre-eminent case surveying the constitutional standards for jail conditions arises out of this State and involves conditions in the Mercer County Jail. *Dawson v. Kendrick*, 527 F.Supp. 1252 (S.D.W. Va.1981). The case presents an exhaustive survey of the federal law in regard to the adequacy of jail conditions which have been made mandatory on the States through the Fourteenth Amendment of the United States Constitution. Without diminishing the quality of *Dawson's* reasoning, we summarize its central constitutional analysis which is amply supported by a host of United States Supreme Court, federal appellate and district court cases.

The constitutional analysis begins with a recognition that certain conditions of jail confinement may be so lacking in the area of adequate food, clothing, shelter, sanitation, medical care and personal safety as to constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *E.g., Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), *reh'g denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83; *Hite v. Leeke*, 564 F.2d 670 (4th Cir.1977); *Newman v. Alabama*, 559 F.2d 283 (5th Cir.1977), *modified sub nom. Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1977), *cert. denied sub nom. Alabama v. Pugh*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Ahrens v. Thomas*, 570 F.2d 286 (8th Cir.1978).[1]

Aside from the Eighth Amendment's cruel and unusual punishment standard the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), recognized that pretrial detainees were entitled to much the same protection under the Due Process Clause of the Fifth Amendment since such detainees have not been found guilty and consequently have not had any sentence imposed which would trigger Eighth Amendment consideration. This principle was summarized as follows: "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." 441 U.S. at 535, 99 S.Ct. at 1872, 60 L.Ed.2d at 466. Despite this difference in the particular constitutional right afforded between the sentenced inmate and the pretrial detainee, it does not appear from a practical standpoint that the end result differs substantially. Where conditions of confinement are at issue, it would seem of little moment as to how the inmate's confinement has occurred. Whether it is a result of a sentence imposed after adjudication of guilt or by confinement resulting from an arrest and the inability to make bail, the focus is still on the environment surrounding the incarceration.

Independent of any constitutional considerations, as *Dawson* noted, there are statutory provisions in our State which reflect a legislative mandate that county jails be operated at certain minimal standards. The requirement of maintaining jails in a clean, sanitary and healthful condition as well as providing adequate medical, dental and nursing services to inmates is prescribed in W.Va.Code, 7–8–2:

"The sheriff of every county shall be the keeper of the jail thereof, but he may with the assent of the county court [county commission], appoint a jailer of the said county, and may take from him a bond with security conditioned for the

---

**1.** While the federal courts have been more active in this area, there are state cases which have addressed this problem. *Levier v. State*, 209 Kan. 442, 497 P.2d 265 (1972); *Cooper v. Morin*, 49 N.Y.2d 69, 399 N.E.2d 1188 (1979);

*Commonwealth v. Hendrick*, 444 Pa. 83, 280 A.2d 110, 51 A.L.R.3d 98 (1971); *Smith v. Turner*, 12 Utah 2d 66, 362 P.2d 581 (1961); *see also* Annot., 51 A.L.R.3d 111 (1973).

faithful performance of his duties. The jailer may be a deputy sheriff and shall take an oath of office like other officers. He shall keep the jail in a clean, sanitary and healthful condition. When any prisoner is sick the jailer shall see that he has adequate medical and dental attention and nursing, and so far as possible keep him separate from other prisoners. Any such medical care and nursing as the jailer may be required to furnish shall be paid for by the county court [county commission]. A failure on the part of the jailer to perform any of the duties herein required with respect to any prisoner in his jail shall be a contempt of any court of record under whose commitment such prisoner is confined, and shall be punished as other contempts of such court." [2]

The Legislature has also recognized that the county courts, now designated as county commissions under Section 9 of Article IX of the West Virginia Constitution, are required to provide sufficient and wholesome food, clean and sufficient bedding and other supplies as set forth in material part in W.Va.Code, 7–8–2a:

"[T]he county court [county commission] of each county shall provide wholesome and sufficient food and clean and sufficient bedding for all prisoners confined in the county jail, and shall furnish the soaps, disinfectants and other supplies needed by the jailer in the performance of his duties."

The right to adequate medical care for inmates mandated in W.Va.Code, 7–8–2, is further supplemented by W.Va.Code, 7–8–7, which in addition requires adequate clothing for indigent inmates:

"The county court [county commission] for every county may appoint a physician to attend all persons confined in jail as lunatics, or persons charged with felony or misdemeanor, and such physician shall furnish all medicines and drugs for, and give proper attention to, all such persons at a stipulated, fixed and exclusive annual allowance.... The county court [county commission] may also, after examination, when a person in its jail charged with or convicted of an offense is unable to provide himself with sufficient clothing, direct the jailer to provide him clothing, and allow therefor not exceeding twenty dollars in one year."

W.Va.Code, 7–3–2, sets out general standards surrounding the construction and maintenance of jails:

"The county court [county commission] of every county ... shall provide ... a suitable jail .... The county court [county commission] shall keep the ... jail ... in constant and adequate repair, and supplied with the necessary heat, light, furniture, record books, and janitor service.... Such ... jails ... shall be built of stone and brick, or stone or brick, or other equally fireproof materials ... The jails shall be well secured, and sufficient for the convenient accommodation of those who may be confined therein, and so that the convicts may be in apartments separate from each other, and from the other prisoners; every apartment shall be so constructed that it can be kept comfortable." [3]

Finally, it should also be noted that the Legislature has enacted statutes enabling the county commissions to finance the construction of jails and other public buildings —W.Va.Code, 7–3–5 and 7—and to issue revenue bonds for the construction or renovation of county jails—W.Va.Code, 7–3–7a. One cannot help but view these statutes as evidencing a legislative intent to require the counties to maintain jails at reasonable and acceptable standards.

## II.

### THE JAIL CONDITIONS

■ Based upon this constitutional and statutory background, we proceed to analyze the present case by finding that the

---

**2.** We have held in *Smith v. Slack,* 125 W.Va. 812, 26 S.E.2d 387 (1943), that a failure of a jailer to follow such guidelines may impose personal liability.

**3.** W.Va.Code, 7–3–2, refers not only to jails but also to courthouses. We have quoted only the provisions applicable to jails.

combination of conditions existing at the Pocahontas County Jail is sufficient to warrant the conclusion that the constitutional standards have been violated by the totality of conditions analysis stated in *Dawson, supra, citing Hutto v. Finney, supra. See also Williams v. Edwards*, 547 F.2d 1206 (5th Cir.1977); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Vest v. Lubbock County Commissioners Court*, 444 F.Supp. 824 (N.D.Tex. 1977); Annot., 51 A.L.R.3d 111, 206 (1973); Comment, *Complex Enforcement: Unconstitutional Prison Conditions*, 94 Harv.L. Rev. 626 (1981). We proceed to examine each of the petitioners' complaints.

### 1. *Personal Hygiene Supplies:*

The petitioners complain they are not provided with personal hygiene supplies such as a comb, a toothbrush and toothpaste and shaving equipment. Several courts have concluded that these items are necessary for adequate hygienic care. The respondents in their answer have indicated a willingness to provide such supplies which is commendable and in accord with what other courts have mandated. *E.g., McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975), *cert. dismissed*, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); *Dawson, supra; Goldsby v. Carnes*, 429 F.Supp. 370 (W.D.Mo.1977).

### 2. *Adequate and Clean Clothing:*

The contention is made and does not appear to be denied that inmates are not furnished with any clothing other than what they are wearing at the time of their arrest or what may be brought to them by friends or relatives. Moreover, there are no laundry facilities or arrangements.

We have previously discussed W.Va. Code, 7–8–7, which requires jailers to provide sufficient clothing for indigent prisoners. Such statutory requirements have been constitutionally mandated with the further requirement that the clothing be periodically laundered. *Dawson, supra; Alberti v. Sheriff of Harris County*, 406 F.Supp. 649 (S.D.Tex.1975). The health reasons behind this requirement are obvious.

### 3. *Bedding and Towels:*

The petitioners claim that they are not provided with sheets, pillows or pillowcases, that towels are provided only on a weekly basis and that blankets are not provided at all times. The respondents assert that the jail temperature is such that blankets are not needed although they are supplied and that sheets, pillows and pillowcases are not available because of an order of the State Fire Marshal and because the inmates may use the bedding to hang themselves. This latter argument, if sound, could be utilized to deny all clothing, towels or like material to inmates since such could be conceivably used for suicidal purposes. To our knowledge no court has accepted this argument but instead courts have required the furnishing of clean bedding and towels. *E.g., Dawson, supra; Goldsby v. Carnes, supra.*

We believe that the Fire Marshal's objections relate to the flammability of the bedding and its possible toxicity in the event it burned. If the respondents desire to contest this conclusion they may furnish further evidence on remand.

### 4. *Communicative Rights:*

The petitioners make a rather broad assertion of violations of their communicative rights—lack of writing materials and stamps, access to telephones, lack of legal materials and the opening of their mail. It is clear that from a constitutional standpoint arising out of the Fourteenth Amendment's due process considerations that a right of meaningful access to the courts is required. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonald*, 418 U.S. 539, 97 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Williams v. Leeke*, 584 F.2d 1336 (4th Cir.1978), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979), such access rights were found applicable to jails. Although as *Dawson, supra* at 1313, points out:

"In considering the degree to which officials must take affirmative action to

assure prisoners meaningful access, the courts have been cognizant of the expected length of a prisoner's confinement:

[I]n determining whether all inmates have adequate access to the courts, the district court need not consider those inmates whose confinement is of a very temporary nature or for purposes of transfer to other institutions. The district judge should have little difficulty, realizing the fundamental nature of the right of access, in determining those cases where the brevity of confinement does not permit sufficient time for prisoners to petition the courts.

*Cruz v. Hauck,* 627 F.2d 710, 719 (5th Cir.1980), *citing Cruz v. Hauck,* 515 F.2d 322, 332 (5th Cir.1975); *Leeds v. Watson,* 630 F.2d 674, 676–77 (9th Cir.1980); *see also* Note, *The Impact of Bounds v. Smith on City and County Jails,* 67 Ky.L.J. 1064, 1077–78 (1978–79)."

*Dawson, supra* at 1313–14, concluded as to those prisoners who were not of a transient character that the county was required "to furnish reasonable postage, writing materials and notarial services to prisoners unable to afford or obtain them" and "to provide sufficient and regular telephone service ... to 'have a reasonable opportunity to seek and receive the assistance of attorneys.' *Procunier v. Martinez,* 416 U.S. [396] at 419, [40 L.Ed.2d 224,] 94 S.Ct. at 1814 [(1974)]."

There is some factual conflict in regard to telephone accessability, but it does appear that writing material and stamps are not provided for indigent prisoners to write counsel or prepare writs. Obviously, in light of the foregoing law, such materials are required to be supplied. Regular telephone access should be provided and if the parties are unable to agree on a suitable plan, the matter should be resolved by the trial court on remand.

The petitioners also contend that they are denied access to legal materials which is controverted by the respondents' statement that material from the county law library is made available upon proper request. We are not informed of the extent of the problem but recognize as does *Dawson* and the Fourth Circuit Court of Appeals in *Williams v. Leeke, supra* at 1340–41, that "a prisoner in a city jail is entitled to reasonable access to the courts and that is not provided one serving a substantial sentence of confinement if, without other legal assistance, he has access only to a law library which is so restricted so as to be unmeaningful." If the parties cannot agree on a suitable arrangement, this matter should be resolved by the trial court on remand.

The claim that the petitioners' incoming mail is opened outside their presence is denied by the respondents. The practice of opening a prisoner's incoming mail to inspect it for possible contraband has been judicially sanctioned in *Wolff v. McDonald, supra.* The presence of the inmate may be required only as to mail from attorneys. *Wolff v. McDonald, supra; Crowe v. Leek,* 550 F.2d 184 (4th Cir.1977); *Dawson, supra.*

## 5. *Visitation:*

Two specific complaints are made concerning visitation. The first is that it is limited to only fifteen minutes. The second is that the communication allowed is by viewing the inmate through a small window and talking through a perforated plate obviously making communication difficult. We recognize that we are dealing with a small county jail that contains a maximum of ten cells containing double bunks and an average population of perhaps eleven inmates and that most of those serving sentences in the jail would be convicted of misdemeanors rather than serious felony crimes. It is true that there may be inmates who are incarcerated awaiting felony trials or who by virtue of their past records may pose a substantial security risk such that limited communication rights as presently existing would be appropriate.

*Dawson, supra* at 1309, dealt with much the same problem and after citing a number of other federal cases [4] concluded:

---

**4.** *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800,   41 L.Ed.2d 495 (1974); *Feeley v. Sampson,* 570

"The inadequate visitation facilities and the meager visitation opportunities at the jail, though reflective more of indifference than of punitive intent on the part of defendants, are nevertheless arbitrary and purposeless under the *Bell v. Wolfish* standard. Requiring prisoners to shout in order to be heard and to strain to see their visitors through barely translucent glass of minimal dimension finds no justification in a legitimate governmental objective."

As to those inmates who pose no substantial security threat, accessible visitation should be provided and if the parties are unable to agree upon an appropriate plan, the trial court on remand should implement such a plan.

### 6. *Medical Care:*

Allegations of inadequate health care are made by the petitioners and denied by the respondents. The depositions taken in the case reveal not so much a lack of health care but rather an indifference to any systematic plan for providing minimal health care. *Dawson* concluded that the Mercer County Jail failed to measure up to the constitutional minimum which requires some initial medical screening, the maintenance of medical records, a regular sick call, the dispensation of prescribed drugs and availability of on-site medical supplies. *Dawson* also pointed out that the lack of regular contact with some person who has some basic health care training makes a sick call rather nugatory. Much of *Dawson's* minimal standards parallel our statutory requirements found in W.Va.Code, 7–8–2 and 7. One of the chief problems revealed in the depositions is that no person trained in health care visits the jail on any regular basis and that the decision on whether a prisoner is sufficiently ill to require transportation to a doctor is apparently made by the jailer who has no health care training. Certainly utilization of periodic visits by a nurse would provide a basis for evaluating whether a doctor is needed.

Again, if the respondents are unable to agree on a suitable health care plan this matter should be resolved by the trial judge on remand.

### 7. *Jail Facilities:*

A. *Exercise:* The primary complaint is the lack of exercise facilities except for a walkway in front of the cells which is approximately twenty-two and one-half feet long and five feet wide. No outdoor exercise is provided even though there are two fenced outdoor areas adjacent to the jail and a larger area behind the jail which could be fenced. One of the petitioners, Hickson, claims that he has been confined for over four months without indoor or outdoor exercise. The petitioners also assert that there is space on the second floor of the jail for a large indoor exercise area but the respondents claim it is not usable because of State fire regulations. The respondents do not deny the lack of outdoor exercise but assert the indoor walkway area is sufficient. The court in *Dawson, supra* at 1298, dealt with lack of exercise complaints and responded:

"Undue restrictions on prisoners' opportunities for physical exercise may constitute cruel and unusual punishment in violation of the Eighth Amendment when they pose an unreasonable threat to the prisoners' physical and mental health. *See Clay v. Miller*, 626 F.2d 345, 347 (4th Cir.1980); *Kirby v. Blackledge*, 530 F.2d 583, 586 (4th Cir.1976); *Rhem v. Malcolm*, 507 F.2d 333, 337 (2d Cir.1974), enforced, 377 F.Supp. 995 (S.D.N.Y. 1974), aff'd, 527 F.2d 1041 (2d Cir.1975), enforced, 432 F.Supp. 769 (S.D.N.Y. 1977)."

In *Campbell v. Cauthron*, 623 F.2d 503 (8th Cir.1980), where pretrial detainees were locked in their cells on a twenty-four hour basis, the court stated: "They must, however, provide a meaningful opportunity for exercise. Merely allowing the inmate to walk around in the narrow corridor between the cells does not provide adequate exercise."

F.2d 364 (1st Cir.1978); *Lynott v. Henderson,* 610 F.2d 340 (5th Cir.1980); *Tunnell v. Robinson,* 486 F.Supp. 1265 (W.D.Pa.1980); *Massey v.*

*Wilson,* 484 F.Supp. 1332 (D.Colo.1980); *Valentine v. Englehardt,* 474 F.Supp. 294 (D.N.J.1979).

It is apparent that some outdoor exercise could be provided at little or no cost. We consider the present indoor exercise area standing alone to be insufficient.

B. *Segregated Confinement:* One of the petitioners, Jones, claims he was confined for two days without clothing and blankets. This incident is touched upon in the depositions but there appears to be some dispute as to the circumstances. The respondents contend that the measure was not punitive but a result of his attempted suicide. It does not appear from the record that his confinement was in an isolation cell of the type that has been rather uniformly condemned because there are no hygienic or sleeping facilities. *E.g., Kirby v. Black-ledge,* 530 F.2d 583 (4th Cir.1976); *Sweet v. South Carolina Department of Corrections,* 529 F.2d 854 (4th Cir.1975); *McCray v. Burrell, supra; Wycoff v. Brewer,* 572 F.2d 1260 (8th Cir.1978); *Dawson, supra.*

In the absence of a developed record on this point, we are unable to determine this issue but accord the petitioners the right to develop further facts before the trial court on remand.[5]

In the course of oral argument, the respondents indicated a willingness to correct some of the deficiencies outlined above. We anticipate that the parties may well be able to agree on an appropriate corrective plan without the necessity of any prolonged hearings below.

We will therefore issue a moulded writ of mandamus directing that the respondents within sixty days from the filing of this opinion detail to the petitioners' counsel such corrective action that they will voluntarily undertake. In the event the matters herein cannot be resolved, the area of disagreement will be heard by the Honorable Larry V. Starcher, who is designated by this Court to sit as a Special Judge of the Circuit Court of Pocahontas County.

Writ Granted as Moulded.

---

**5.** The lack of a developed record precludes our determination of the other of the petitioners' claims including the lack of reading materials and eating facilities. We hold that further development of these issues is not foreclosed on remand.