Jeffrey HOMER and Robert Chavez, Plaintiffs and Appellants,

v.

Lawrence W. MORRIS, Roy Van Houton, George Ide, George Jacquart, and Bruce Daniels, Defendants and Respondents.

No. 18806.

Supreme Court of Utah.

June 29, 1984.

---

William W. Downes, Jr., Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, Atty. Gen., Brent A. Burnett, Salt Lake City, for defendants and respondents.

STEWART, Justice:

The plaintiffs, Jeffrey Homer and Robert Chavez, are inmates at the Utah State Prison. Their parole dates were revoked following a disciplinary hearing in which the disciplinary committee determined that the plaintiffs had participated in the stabbing of a fellow inmate.

On appeal from the district court's denial of their petitions for writs of habeas corpus, the plaintiffs claim that the hearing was invalid because: (1) written notice of the acts with which they were charged was inadequate; (2) no evidence existed of an unidentified informant's reliability; (3) their request to call witnesses on their behalf was denied; (4) the written record of the disciplinary proceedings was inadequate; and (5) they did not receive detailed written statements of the unidentified informant's statements.

■ Initially, we note that defendants contend that "habeas corpus is available to challenge the conditions of confinement only in a 'rare case' in which the petitioner has been subjected to cruel and unusual punishment." They cite *Smith v. Turner*, 12 Utah 2d 66, 362 P.2d 581 (1961); and *Chapman v. Graham*, 2 Utah 2d 156, 270 P.2d 821 (1954), in support. The contention is incorrect. The writ has never been limited to cruel and unusual punishment cases; the cases cited do not hold otherwise.

Historically, the office of the Great Writ was to test the legality of a restraint. *E.g., Chapman v. Graham, supra.* In recent years its office has been expanded. In *Ziegler v. Miliken*, Utah, 583 P.2d 1175, 1176 (1978), we stated that the writ may be used to challenge the legality of a restraint and "other alleged violations of basic rights," including violations of the prohibition against cruel and unusual punishment and "anything that would properly fit within that charge."

■ In the instant case, the plaintiffs allege that their parole date was revoked without due process. Before a parole date has been established, an inmate has no constitutional right to be placed on parole. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). The parties have not, however, addressed the issue whether a parole date that has been established is a "liberty" interest protected by the Due Process Clause of the Fourteenth Amendment or of Article 1, § 7 of the Utah Constitution. The defendants merely assert that admission to parole is not so protected, and cite *Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). That case, however, was decided on the basis of the status of parole under Ohio law.[1] Since the issue is not briefed, we decline to decide whether a parole date that has been fixed is a "liberty" interest.

---

1. In *Jago* it was apparently conceded that the Ohio parole statute did not create a protected liberty interest under the Fourteenth Amendment. The basis of the prisoner's asserted liberty interest was his expectation of parole based on a notice from the parole board. The Supreme Court held that where a prisoner is notified that parole is forthcoming, he has no liberty interest under the "mutually explicit understandings" doctrine, *see Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which is a property interest doctrine.

██ Nevertheless, the plaintiffs do have procedural due process rights in a prison disciplinary proceeding for alleged "flagrant or serious misconduct." *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–2975, 41 L.Ed.2d 935 (1974). Furthermore, they may assert a denial of such rights in a habeas corpus proceeding. *See Ziegler v. Miliken, supra.*

We turn then to the plaintiffs' allegations that the disciplinary proceeding violated procedural due process. Plaintiffs do not contend, nor could they validly do so, that they are entitled to all the procedural rights afforded in a criminal trial. The nature of due process is not the same in every setting. Necessarily the existence and scope of the specific procedural safeguards recognized are determined by the context and nature of the proceeding, and the societal, institutional and personal interests at stake. *See Wolff v. McDonnell, supra.* Clearly, both the inmates and the prison have an interest in the security of the prison and the safety of inmates. Without challenging that proposition, the plaintiffs contend they were not given the procedural safeguards to which they were entitled.

██ 1. Plaintiffs' claim that they were not given adequate notice of the nature of the violation with which they were charged is without merit. Six days before the disciplinary hearing was held, each of the plaintiffs were given the following documents: an "Inmate Violation Report"; a "Notice of Hearing and Statement of Inmate Rights"; a "Reporting Witness Statement"; the statement of an unidentified inmate-informer called an "Inmate 'X' Statement"; and copies of five different incident reports.

The inmate violation report given to Homer alleges that he violated subsections 1.d.2(b) and (j) of the prison disciplinary rules, which prohibit "any act involving violence; or any threat or advocacy of violence made verbally, physically or in writing," and "tampering with or blocking any locking device." Chavez's inmate violation report alleges that he violated § 1.d.2(a)(1), which prohibits "any act chargeable as a crime under the laws of Utah or of the United States ... " and "interfering with or failing to attend count; failure to be at designated or assigned areas; being in an unauthorized area."

The inmate "X" statement set forth the evidence supplied by a confidential inmate-informer. It stated that "inmate X gave testimony stating that inmate Jeff Homer, No. 14188 was involved in the stabbing of Steve Bumpers on September 18, 1981." Another inmate "X" statement named Robert Chavez as also having been involved in the same stabbing. The five incident reports and the recording witness statements were more specific about the stabbing of the victim. The recording witness statements state the time and date of the stabbing of the victim and the type of weapon used. They also state that following the stabbing a towel and bedding that were freshly laundered and that appeared to be bloodstained were found in Chavez's cell. The reporting witness statement with respect to Homer also stated the time and date of the stabbing and that the locking device for Homer's cell had been tampered with so that he had control over the opening and closing of the cell door.

These documents, taken together, gave the plaintiffs sufficient written notice of the details of the violations alleged to prepare a defense. Although the details of the charges were provided in several different documents rather than one, that is of no constitutional consequence. The plaintiffs were sufficiently apprised of the charges to meet the requirements of due process. *Wolff v. McDonnell,* 418 U.S. 539, 563–64, 94 S.Ct. 2693, 2978–2979, 41 L.Ed.2d 935 (1974).

2. The plaintiffs also contend that their rights to confrontation under the Due Process Clause of the Fourteenth Amendment were denied because the testimony of the unidentified informant was relied upon in the disciplinary hearing without any supporting evidence of the informant's reliability.

■ Given the substantial risks that informers in prisons run when they cooperate with prison officials, it can hardly be expected that the identity of confidential informers must be made known to one accused of violating prison rules or that the accused have the right to confront confidential informers. *Id.* Nevertheless, when a disciplinary board's determination of guilt is based on evidence supplied by an unidentified informant, the record must contain information from which the board can reasonably conclude that the informant is credible and his information is reliable. *Kyle v. Hanberry,* 677 F.2d 1386 (11th Cir.1982). Furthermore, the informant's statement must have some specificity as to facts alleged and not simply charge a violation in conclusory terms.

■ The investigating officer, who had known the informant for nine years, interviewed the informant on two occasions and was convinced that his information was credible and reliable. The disciplinary hearing committee reviewed the investigating officer's report and privately reviewed information the investigating officer provided to the committee. The committee declined to furnish the plaintiffs any information as to the identity of the informant because of security reasons.

The credibility and the testimony of the informant was further corroborated by other evidence that also inculpated the plaintiffs. During the investigation, freshly laundered, bloodstained towels and bedding were found in Chavez's cell. Additionally, Homer's cell had been tampered with so that he could have control over the opening and closing of the cell door.

The disciplinary hearing committee had sufficient information to conclude that the informant was reliable and that the informant spoke with personal knowledge. *See Kyle v. Hanberry, supra.*

■ 3. A prisoner is not constitutionally entitled to call witnesses during a disciplinary committee hearing, but a prisoner "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2693, 2979, 41 L.Ed.2d 935 (1974). In the instant case, the hearing was held in the maximum security area of the prison, and the committee decided that the security of the prison would not allow witnesses to be called. The prison has a policy that no two inmates are permitted in an area of maximum security at one time. The committee considered the plaintiffs' request for witnesses, and the decision to refuse the request was not automatic. *See Mawhinney v. Henderson,* 542 F.2d 1, 3 (2d Cir.1976); *United States ex rel. Speller v. Lahe,* 509 F.Supp. 796, 801 (S.D.Ill.1981). In lieu of having the plaintiffs' witnesses present to testify, the committee allowed the plaintiffs to provide statements written by the witnesses, and those statements were considered by the committee.

■ 4. The plaintiffs' argument is without merit that the written record in this case was insufficient. The committee set forth the information it relied on to make its decision and explained that security reasons prevented it from identifying the informant or giving any further information regarding the informant. The committee's findings support its conclusions, and the plaintiffs were given notice regarding the charge prior to the hearing. In short, there was no violation of the stipulation in *Baker v. Milliken,* No. C–78–0423J (D.Utah April 30, 1981), between the Division of Corrections and certain prisoners in the Utah State Prison, assuming but not deciding that the stipulation is controlling here.

■ 5. The plaintiffs contend that the unidentified informant's statements which were provided to the plaintiffs did not contain sufficient detail. The statements identified the plaintiffs as having been involved in the stabbing. The statements were sufficient in light of the conceded fact that a stabbing had occurred, and in light of other

evidence provided to the plaintiffs that corroborated their participation.

Affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

OAKS, J., having resigned, does not participate herein.