Kendall Q. NORTHERN, Plaintiff
and Appellant,

v.

N. Eldon BARNES, Warden, Utah State
Prison and the Department of Correc-
tions through the Board of Pardons,
Defendants and Appellees.

No. 900566–CA.

Court of Appeals of Utah.

Jan. 24, 1992.

See also 814 P.2d 1148.

Jo Carol Nesset–Sale, Salt Lake City, for
plaintiff and appellant.

R. Paul Van Dam, Lorenzo K. Miller, and
Kirk M. Torgensen, Salt Lake City, for
defendants and appellees.

Before BENCH, P.J., and BILLINGS and
GARFF, JJ.

## OPINION

BENCH, Presiding Judge:

Kendall Q. Northern unsuccessfully petitioned the trial court for a writ of habeas corpus following a decision of the Board of Pardons (the Board) to rescind his original parole date. Northern appealed the trial court's decision, but was subsequently paroled during the pendency of this appeal. We affirm.

## FACTS

In 1980, Northern, an eighteen-year-old drifter, pleaded guilty to second degree murder and aggravated robbery for his participation in the shooting death of a cab driver earlier that same year. Northern was sentenced to two five-to-life sentences at the Utah State Prison. He later admitted he was under the influence of LSD at the time of the shooting, and had been deeply involved in drugs.

After Northern had been imprisoned for a year, the Board met and granted him a May 10, 1988 parole date. The Board reconsidered Northern's status in 1984, and determined that the 1988 parole date would remain intact despite evidence that Northern had used drugs at the prison during his incarceration.

In 1986, Northern was transferred to the Duchesne County Jail where he attained trustee status. Over the next two years, Northern was allowed to work unsupervised outside the jail. In early 1988, with only a few months remaining before his projected parole, jail authorities discovered that Northern was again using drugs. This information was reported to the prison and received by the Board before his parole date.

Two months before his parole date, a psychological assessment of Northern was made at the request of the Board. The report indicated that Northern had been a

heavy drug user, and had been unable to deal with life's stresses without drugs. The report also said Northern acknowledged that his drug dependence was a major factor contributing to his antisocial behavior. Before the report was published, the Board also attempted to obtain Northern's consent to additional terms of release that would have included drug testing. On the advice of his father, however, Northern refused to consent to the new conditions.

On May 9, 1988, the Board rescinded Northern's May 10 parole date, pending further review, and ordered another psychological evaluation. The need for another psychological evaluation and complete prison progress report was listed in the written notice by the Board as the ground for rescinding Northern's original parole date. The supplemental assessment focused on potential problems affecting Northern's adjustment into society posed by his relationship with his father. A full rescission hearing was then scheduled for July 8, 1988.[1]

At that hearing, the Board determined that Northern continued to be a risk to society, and refused to grant him parole at that time. The Board scheduled a rehearing for May 1990, and Northern was returned to the Duchesne County Jail. Two months later, however, he escaped and fled to Canada. The Board then rescinded the rehearing scheduled for May 1990. Northern was captured and returned to prison on October 6, 1989.

Northern petitioned for extraordinary relief and habeas corpus under Rule 65B(b)(2) and (4), and (f) of the Utah Rules of Civil Procedure.[2] The petition prayed for (1) declaratory relief as to the unlawfulness of Northern's confinement since May 10, 1988, (2) a demand for his immediate release, and (3) damages in excess of $10,000 for "breach of contract" on the ground that

---

1. The administrative rules of the Board state, as policy, that "[a]n offender shall be notified at least seven calendar days in advance of a hearing, except in extraordinary circumstances, and shall be specifically advised as to the purpose of the hearing." *See* Utah Admin.R. 655–202 (1991).

2. Rule 65B was completely reorganized after Northern's petition was filed. *See* Utah R.Civ.P. 65B (amended effective September 1, 1991) and advisory committee note.

a parole date created a legally binding agreement on the State. After a hearing, the trial court denied the petition, and Northern filed a notice of appeal. The Board subsequently set a July 1991 parole date, and required restitution of $26,350 by Northern as a condition of parole. Northern agreed to the new conditions, and was paroled on July 9, 1991, while this appeal was pending.

## ANALYSIS

■■■ In general, the purpose of extraordinary relief under Rule 65B is to test the lawfulness of imprisonment, and the propriety of any related proceedings, by forcing a judicial hearing. *See Ziegler v. Miliken,* 583 P.2d 1175, 1176 (Utah 1978). Northern presents no authority, however, for extending the purposes of extraordinary writs as a procedure to bring contract claims. We also conclude that the demand for Northern's immediate parole is moot because parole was granted subsequent to the filing of this appeal. *Spain v. Stewart,* 639 P.2d 166, 168 (Utah 1981).[3] We are therefore left only with Northern's prayer for declaratory relief as to the unlawfulness of his "confinement."

■■■ Inasmuch as Northern is no longer incarcerated, we must consider whether his request for declaratory relief is also moot. Courts have reviewed habeas corpus petitions that would have been otherwise rendered moot by the release of a prisoner when the prisoner suffers "collateral legal consequences" from a conviction, such as "the use of the conviction to impeach the petitioner's character or as a factor in determining a sentence in a future trial, as well as petitioner's inability to vote, engage in certain businesses, or serve on a jury." *Duran v. Morris,* 635 P.2d 43, 45 (Utah 1981).

Northern argues that he would have completed his parole in May 1991, if the Board had not violated his due process rights in rescinding his original parole date. Thus, the request for declaratory relief becomes a question of whether Northern's extended parole status was a collateral legal consequence of alleged due process violations. In *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963), the United States Supreme Court held that release on parole does not render a petition for habeas corpus moot because parole "imposes conditions which significantly confine and restrain [a parolee's] freedom." Since parole imposes conditions of confinement and Northern's parole status past May 1991 is a consequence of rescinding his original parole date, we proceed to address his claim for credit against his parole period for time served while incarcerated after his original parole date.

■■■ In prior cases, discretion to give credit for time served was determined to lie solely with the Board. In *State v. Schreuder,* 712 P.2d 264, 277 (Utah 1985), the reason given for rejecting a similar argument demanding credit for time served was the Board's discretion to determine the period of time to be served. Likewise, in *State v. Alvillar,* 748 P.2d 207, 208–09 (Utah App.1988), we held that Utah courts have no authority to grant credit for time served prior to conviction since the power to reduce or terminate sentences is vested exclusively with the Board under Utah Code Ann. § 77–27–5(3) (1990).

■■■ Northern suggests that the Board's exercise of this discretionary authority is now subject to judicial review under the recent case of *Foote v. Utah Board of Pardons,* 808 P.2d 734 (Utah 1991). We disagree. In *Foote,* a prisoner sought an extraordinary writ, contending "that the manner in which his parole hearings have been conducted [had] deprived him of procedural due process." *Id.* The Utah Supreme Court held that, under the Utah Constitution, an inmate is entitled to due

---

**3.** Although moot questions are generally not considered on appeal due to the judicial policy against advisory opinions, courts have reached the merits of an issue that is technically moot, but is "of wide concern, affects the public interest, is likely to recur in a similar manner, and, because of the brief time any one person is affected, would otherwise likely escape judicial review...." *Wickham v. Fisher,* 629 P.2d 896, 899 (Utah 1981).

process in proceedings before the Board. *Id.* at 735. The supreme court then referred the case to a trial court to ascertain factually "the procedures followed by the board" and to decide what is procedurally required in "the conduct of the parole hearings." *Id.* Since Northern was afforded full procedural due process by the July 8, 1988 hearing, any of the alleged procedural deficiencies in rescinding his original parole date were remedied before this petition was filed. Northern's claim relates, therefore, not to the procedural due process issues outlined in *Foote*, but to the reasonableness of the Board's decision in not granting Northern credit for the time served beyond his original parole date.

 Termination of Northern's sentence is triggered by "completion of three years on parole outside of confinement and without violation ... unless the person is earlier terminated by the Board of Pardons." Utah Code Ann. § 76-3-202(1) (1990). "Any time spent in confinement awaiting a hearing ... concerning revocation of parole constitutes service of sentence" rather than time on parole. Section 76-3-202(3)(c). Since the Board has discretion to parole or discharge an inmate at any time, *see* section 76-3-202(5), it could have given Northern a parole period of less than three years and thereby credited him for the time served while incarcerated beyond his original parole date. We deem the Board's decision to not give Northern an earlier release date an exercise of its discretion.

The Board's right to rely on any factors known in May 1988, or later adduced at the July 1988 hearing, and the weight to be afforded such factors in deciding whether Northern posed a societal risk, as well as whether an order of restitution was appropriate, are all matters within the discretion of the Board. They are precisely the kinds of issues that are not subject to judicial review under section 77-27-5(3). Accordingly, we hold that habeas corpus is not available in this case as a post release remedy to modify the release date ordered by the Board.

We have reviewed the remaining issues raised on appeal and deem them to be without merit. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (it is within our discretion to "analyze and address in writing each and every argument, issue, or claim raised").

## CONCLUSION

The trial court's denial of the writ is affirmed.

GARFF, J., concurs.

BILLINGS, J., concurs in the result.