545 P.2d 1008
**Terry Burl CALKINS, Plaintiff-Appellant,**
**v.**
**Raymond W. MAY, Defendant-Respondent.**
**No. 11366.**

Supreme Court of Idaho.

Feb. 2, 1976.

William L. Vasconcellos of Matthews & Lee, Boise, for plaintiff-appellant.

Wayne L. Kidwell, Atty. Gen., Gordon S. Nielson, Sr. Deputy Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for defendant-respondent.

DONALDSON, Justice.

Petitioner-appellant Terry Burl Calkins, an inmate at the Idaho State Penitentiary, filed a petition for writ of habeas corpus on April 11, 1973. In his petition he alleged that he was placed in the maximum security unit for "active participation and aggravated assault in the March 7, 1973 riot." He alleges that at the hearing he was denied his right to counsel and that "Mr. Crowl the complaining officer against me was also the judge of the court that found me guilty." [1]

The district court denied the petition in a memorandum decision and order filed April 27, 1973. The district court held that the restrictions complained of could only justify a writ for habeas corpus "where such restrictions involve cruel and unusual punishment in violation of the Constitution." *Burge v. State*, 90 Idaho 473, 413 P.2d 451 (1966); *Mahaffey v. State*, 87 Idaho 228, 392 P.2d 279 (1964). The district court concluded that the allegations in the petition did not state grounds for issuance of the writ. The petitioner appealed to this Court and a motion was filed by the state to dismiss the appeal on the ground that petitioner was released from maximum security on August 1, 1973. The motion was denied by this Court on December 18, 1974, the order stating that mootness is not a ground for a motion to dismiss an appeal under the law and the appellate rules of this Court. However, the same argument is properly before us on this appeal and merits consideration.

In *Smith v. State*, 94 Idaho 469, 491 P.2d 733 (1971), we adopted the rule that " 'a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.' " Citing *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968). We find the rule equally applicable where, as here, the alleged collateral consequences flow not from a conviction, but from prison disciplinary action affecting the terms of the prisoner's present or future restraint.

On oral argument of this matter petitioner's counsel urged that the disciplinary action of the prison authorities may affect the petitioner's eligibility for parole. Certainly, "adverse effects on an inmate's eligibility for parole are within the class of collateral legal consequences which will remove a case from the limbo of mootness." *Smith v. State, supra.* Respondent argues, however, that redress of such collateral consequences is beyond the scope of habeas corpus. The writ of habeas corpus, he alleges, merely tests the legality of the restraint, when the restraint complained of ends, there is nothing left for the Court to do.

We disagree. Petitioner's eligibility for parole affects the duration, if not the fact, of his physical restraint and is within the traditional limits of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 487, 93 S.Ct. 1827, 1935, 36 L.Ed.2d 439 (1973). Indeed, "by virtue of both precedent and statutory authority, our courts are not limited to a simple remand or discharge of the prisoner, but may 'dispose of such party as the justice of the case may require.' I.C. § 19-4212." *Mahaffey v. State, supra.*

While the petition herein does not expressly mention the possibility of adverse

---

[1] The named defendant, Raymond W. May, is no longer a prison official and a proper party to this action. Nevertheless, the Attorney General has filed his brief and made oral argument without raising this issue. Consequently, we deem the petition to be directed against the present prison officials in accordance with I.C. § 5-319 and find that their interests were adequately represented on appeal.

collateral consequences, it must be construed liberally, especially where prepared by the prison inmate without the assistance of counsel. *Goff v. State*, 91 Idaho 36, 415 P.2d 679 (1966). Therefore, we find that the possibility that petitioner's parol eligibility would be adversely affected by the disciplinary penalty imposed against him is sufficient to avoid mootness.

 The basis of petitioner's appeal is his claim that his disciplinary hearing violated the due process standards established by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Wolff* was a class action brought by inmates of a Nebraska prison for damages and injunctive relief under 42 U.S.C. § 1983. Among their allegations was the prisoner's claim that the disciplinary procedures involved in the taking away of "good time" credits violated the Due Process Clause of the Fourteenth Amendment. Holding that "there is no iron curtain drawn between the Constitution and the prisons of this country," the Court in *Wolff* established the following minimum procedural requirements for disciplinary hearings:

(1) advance written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense;

(2) the factfinders must prepare a written statement as to the evidence relied upon and the reasons for the disciplinary action;

(3) the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;

(4) where the case involves an illiterate inmate or a complex issue, the inmate should be allowed to seek the aid of a fellow inmate or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff;

(5) the decisionmaker must be "sufficiently impartial to satisfy the Due Process Clause."

In the *Wolff* case, the disciplinary proceedings in question resulted in a deprivation of a prisoner's "good time." However, as the Court specifically pointed out:

"[I]t would be difficult for the purposes of procedural due process to distinguish between the procedures that are required where good-time is forfeited and those that must be extended when solitary confinement is at issue. The latter represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. Here, as in the case of good-time, there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction." 94 S.Ct. 2982, n. 19.

 In the present case, however, we are foreclosed from reaching the merits of petitioner's appeal by the Court's directive in *Wolff* that the new procedural rules, even if applicable, are to be applied only in future disciplinary hearings. The Court states:

"Despite the fact that procedures are related to the integrity of the fact-finding process, in the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the significant impact a retroactivity ruling would have on the administration of all prisons in the country, and the reliance prison officials placed, in good faith, on prior law not requiring such procedures. During 1973, the Federal Government alone conducted 19,000 misconduct hearings, as compared with 1,173 parole revocation hearings, and 2,023 probation revocation hearings. * * * We also note that a contrary holding

would be very troublesome for the parole system since performance in prison is often a relevant criteria for parole. On the whole, we do not think that error was so pervasive in the system under the old procedures to warrant this cost or result." 94 S.Ct. at 2983.

The decision in *Wolff* was handed down on June 26, 1974, well after the complained of action in the present case. Consequently, the authority relied upon by the district court in denying the petition was still valid and correctly applied.

The order of the district court is affirmed.

McQUADE, C. J., and McFADDEN, J., concur.

BAKES, Justice (concurring specially).

I concur with the majority opinion which holds that the *Wolff* decision has not as yet been made retroactive. As a result, I think it would be better to withhold laying down specific rules of conduct for prison officials until we have a case before us which requires us to set those standards.

SHEPARD, Justice (concurring in part and dissenting in part).

While I concur in the affirmance of the district court's denial of the petition for habeas corpus, nevertheless, I disagree with much that is said in the majority opinion. The petition is the handwritten type prepared by the inmate himself. Hence, I agree it must be construed liberally. Nevertheless, such rule does not require this or the lower court to read anything into the petition which is just not there even inferentially. The petition states "on or about the 28th day of March, 1973, I, Terry Burl Calkins, *went to court* here at maximum security complex at the Idaho State Penitentiary." He relates that he was "found guilty of active participation and aggravated assault in the March 7, 1973, riot" and that he received "time in maximum security." His only stated complaints are "I didn't have a lawyer present.

Was never informed of my rights, never given a chance to get a lawyer. Mr. Crowl, the complaining officer against me was also the judge of the court that found me guilty, * * * *"

In short, there was nothing before the district court and there is nothing before this Court relating to any complaint of being deprived of "good time." Even assuming that the majority opinion is correct in its interpretation of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L. Ed.2d 935 (1974), for all we know the petitioner did have advance written notice of the charges, the factfinders did prepare a written statement, the petitioner was allowed to call witnesses and present evidence and the inmate did have assistance from a fellow inmate or from the staff. See, *Living Guide and Regulations of the Idaho State Correctional Institution* (1975).

I must further disagree with the majority's application of *Wolff* to this case albeit it was held not to be controlling because of the time framework. *Wolff* clearly, as recognized by the majority, was not for relief by way of habeas corpus, but rather for damages and injunctive relief under the Federal Civil Rights statute. The court in *Wolff* was dealing with censorship of attorney-prisoner mail, the inmate legal assistance program and a demand for the restoration of forfeited good time credit. While the court in *Wolff* purports to fashion relief on the basis of the due process clause under the Fourteenth Amendment, a close reading of the case indicates otherwise. The court in *Wolff* rejected the argument that the same type of "due process" laid down by the court in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L. Ed.2d 484 (1973) and in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed. 2d 656 (1973), were applicable to the situation in *Wolff*. "Rights" usually held to be incorporated in the due process clause such as the right to counsel or the right of confrontation and cross-examination of witnesses were not encompassed in the *Wolff*

type of due process. The court held that the inmate has no right to be heard before persons other than those who were officers in the prison complex. In fact, by my reading *Wolff* requires only that the inmate be given written notice of charges and that a record of the reasons for his forfeiture of good time be made. In *Wolff* the court avoided even holding clearly that an inmate has a right to call witnesses or present evidence. My best reading of *Wolff* leads me to the conclusion that we no longer have a due process concept in the orthodox sense of certain procedural requirements which attain constitutional dimension. Rather, we now have a strange type of "floating" due process in which nothing is certain but which depends on the circumstances, place and status of the defendant. In some circumstances certain orthodox procedures are required, in other circumstances they are not or *may* not depending on exigency or balancing of relative interests.

Perhaps it is all best expressed in the words of the court itself in *Wolff*:

"Perhaps as the problems of penal institutions change and correctional goals are reshaped, the balance of interests involved will require otherwise. But in the current environment, where prison disruption remains a serious concern to administrators, we cannot ignore the desire and effort of many States, including Nebraska and the Federal Government, to avoid situations that may trigger deep emotions and that may scuttle the disciplinary process as a rehabilitation vehicle. To some extent, the American adversary trial presumes contestants who are able to cope with the pressures and aftermath of the battle, and such may not generally be the case of those in prisons of this country. At least, the Constitution, as we interpret it today, does not require the contrary assumption. *Within the limits set forth in this opinion we are content for now to leave the continuing development of measures to review adverse actions effecting in-*

*mates to the sound discretion of corrections officials administering the scope of such inquiries."*

Reluctantly I point out that while Mr. Justice Douglas, dissenting in *Wolff*, did discuss and treat the question of a change in prisoner status to "solitary confinement," as indicated above, no issue of change of status existed in the *Wolff* circumstances and the only language contained in the majority opinion in *Wolff* was that of a parenthetical footnote which is quoted in the majority herein. At best such language is unnecessary, at worst it was pure dicta.

Hence, I would affirm the district court's denial of the writ of habeas corpus for the reason that even if taken as true, the allegations of the petition do not allege violations of the due process clause as interpreted by the latest decisions of the U.S. Supreme Court.