821 P.2d 949

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jaime GALLEGOS a/k/a Daniel Trujillo, Defendant– Appellant.**

No. 18726.

Supreme Court of Idaho, Idaho Falls, Sept. 1991 Term.

Nov. 14, 1991.

Rehearing Dismissed Jan. 10, 1992.

Weinpel, Woolf, & Combo, Idaho Falls, for defendant-appellant. Stevan H. Thompson argued.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

McDEVITT, Justice.

This case involves a warrantless search and seizure and a knowing waiver of rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The issues on appeal are:

I. Did the police officers have a reasonable and articulable suspicion to stop appellant's vehicle?

II. Did the warrantless search of appellant's vehicle fit within one of the exceptions to the warrant requirement?

III. Did appellant make a knowing and voluntary waiver of his *Miranda* rights?

## THE FACTS

*Events Leading Up To The
Search And Seizure*

On November 28, 1989, the Idaho Falls Police Department received information that appellant, Jaime Gallegos, had checked into a motel in Idaho Falls. Detective David Frei learned that appellant had given the motel a false address that had been watched in the past in connection with drug-trafficking investigations. Frei also learned that numerous phone calls were made from appellant's room, some placed to individuals previously investigated for drug-trafficking.

Appellant checked into the motel again on November 29. This time, he gave a different false address that had also been watched during past drug investigations. The police rented an adjoining room with a common door and called in a Spanish translator from the United States Immigration and Naturalization Service (INS). During the evening, the police observed two groups of people arrive at appellant's room in vehicles registered to individuals previously investigated for drug-trafficking. The translator, Agent Martinez, testified that he could hear and understand certain conversations through the common wall, including hearing a person say "the stuff will be here on Friday."

On November 30, the police followed appellant around town. He was driving a vehicle that the police discovered was registered in the name of Jaime Gallegos. They observed him driving very slowly and backtracking, driving behavior that Detective Frei believed was consistent with that of a drug-trafficker attempting to set up some type of delivery.

On December 1, the police followed appellant to the addresses of several people known from previous drug investigations. At one of the addresses, he was observed exiting the dwelling in a nervous manner and placing a red shaving bag beneath the spare tire in the rear compartment of his vehicle. He was also followed to an Ernst Home Center, where he was observed purchasing a box of garbage bags, which are commonly used to wrap drugs. At around 5:00 p.m., the police lost track of appellant for approximately one and one-half hours.

Before 6:45 p.m., the police found appellant's vehicle parked outside a bar that was known by the police to be patronized by people investigated for drug-trafficking. The police observed cars parked outside belonging to people previously investigated for drugs. At 6:45 p.m., appellant, now appearing to be relaxed, and another man were seen leaving the bar in appellant's vehicle.

The officers followed the two men to a Fred Meyer Store, where they appeared to be jewelry shopping. They left the store and were followed to an address belonging to a person previously investigated for drugs. They left after a few minutes.

At this point, the officers determined that a drug transaction had taken place, and they decided to pull the vehicle over at 7:19 p.m. After the stop, both men denied ownership of the vehicle.[1] Gallegos told the officers that his name was Daniel Trujillo. After this, Detective Ericsson guided Sammy, a drug-detection dog, to the side exterior of the vehicle. Sammy began sniffing around the side and alerted on the rear end of the car. Then, Sammy entered the car, sniffed around the front area, and finally alerted on the rear directly above the spare tire. The officers opened the liftback, raised the spare tire, and found a red shaving bag containing ten plastic baggies with a cocaine-type substance inside. The officers did not have a search warrant.

---

**1.** The State does not contest standing.

*The Custodial Interrogation
By Martinez*

On December 2, 1989, Agent Martinez of the INS went to the police station to speak with appellant. Martinez identified himself as an agent and told appellant that he was there to ask some questions. Martinez was casually dressed, and the two men were seated in a large visitors area.

Appellant initially identified himself as Daniel Trujillo. After Martinez expressed his doubt, appellant admitted that his true name was Jaime Gallegos and that he was a native and citizen of Mexico. At this point, Martinez handed appellant an INS form written in Spanish that listed his *Miranda* rights. Appellant read the form and said that he understood and was willing to answer questions without an attorney. Appellant signed the form.

After asking biographical questions, Martinez asked appellant why he was being held in jail. Gallegos replied that he had been caught with ten pieces of cocaine that he had purchased in Los Angeles.

### PRIOR PROCEEDINGS

On December 15, 1989, the prosecuting attorney of Bonneville County filed an amended complaint, charging appellant with count I, possession of a controlled substance with intent to deliver, and counts II through X, failure to affix a drug stamp. Appellant pled not guilty, and he moved to suppress the evidence seized by the police and any statements made as a result of questioning after his arrest. The district court denied this motion, ruling that probable cause existed to justify the stop of appellant's vehicle and that *Miranda* was complied with prior to obtaining statements from appellant.

Appellant entered his conditional plea of guilty pursuant to I.C.R. 11(a)(2). He specifically reserved his right to review the ruling of the district judge in denying his motion to suppress evidence as set forth in the memorandum decision of March 5, 1990. Appellant filed a notice of appeal, appealing from the final judgments of conviction (counts I and III) entered in the proceedings on April 26, 1990.[2] Appeal was taken pursuant to I.R.A.P. 11(c)(1).

### THE POLICE OFFICERS HAD A REASONABLE AND ARTICULABLE SUSPICION TO STOP APPELLANT'S VEHICLE

Appellant argues that the stop of the car was not reasonable because the officers did not have a particularized and objective basis for suspecting the person stopped of criminal activity. Appellant further argues that none of the traditionally recognized bases for an investigatory stop existed in this case. Finally, appellant argues that the respondent's argument is really based on the appellant fitting a "drug courier profile."

The United States Supreme Court has held that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). This standard is less demanding than the probable cause standard. *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585. We have construed Art. 1, § 17 of the Idaho Constitution to permit an investigatory stop in accordance with the rationale of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *State v. Johns*, 112 Idaho 873, 877, 736 P.2d 1327, 1331 (1987). In *State v. Post*, 98 Idaho 834, 837, 573 P.2d 153, 156 (1978), (*overruled on other grounds, State v. Bottelson*, 102 Idaho 90, 94, 625 P.2d 1093, 1097 (1981)), we said:

> A police officer lacking probable cause to make an arrest may nonetheless approach and detain a person for purposes of investigating possible criminal conduct. To justify such an investigative stop the police officer must be able to point to specific and articulable facts

which, together with rational inferences from those facts, reasonably warrant that action.

Therefore, the proper inquiry is to look at the totality of the circumstances and ask whether the facts available to the officers at the time of the stop gave rise to a reasonable suspicion, not probable cause to believe, that criminal activity may be afoot.

In this case, the officers had watched appellant over a three-day period. They discovered that he had registered in motels using two different addresses. They observed him associating with people known from previous drug-trafficking investigations. They discovered that he had placed a number of phone calls from a motel room, some to people known from previous drug investigations. They observed him place a shaving-type bag beneath the spare tire of his car after exiting a residence that had been watched in the past in connection with drug investigations. They observed his strange driving behavior, which they believed to be consistent with a person attempting to set up a drug transaction. They observed him suddenly appear relaxed after leaving a bar that had been watched during past drug investigations. Taken as a whole, these articulable facts, together with rational inferences drawn from them, could give rise to a reasonable suspicion that criminal activity may be afoot.

Furthermore, there is no such thing as a "traditionally recognized basis" for an investigatory stop. The proper inquiry is to look at the totality of the circumstances. In *Sokolow*, 490 U.S. at 7–8, 109 S.Ct. at 1585, the United States Supreme Court rejected the Ninth Circuit's "effort to refine and elaborate the requirements of 'reasonable suspicion'" as being an "unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment." In *State v. Haworth*, 106 Idaho 405, 406, 679 P.2d 1123, 1124 (1984), we agreed with the United States Supreme Court that the standard simply requires an examination of the totality of the circumstances, citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

Finally, this case does not involve a "drug courier profile." We use this term to refer to the situation where the police have a "somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980). At trial, there was no testimony regarding such a compilation.

## THE WARRANTLESS SEARCH OF APPELLANT'S AUTOMOBILE FALLS WITHIN THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT

■ Appellant states that warrantless searches are *per se* unreasonable and must fit within one of the specifically established and well-delineated exceptions to be reasonable. He argues that when the officers stopped the appellant's vehicle, probable cause extended no further than the red shaving bag. For authority, he cites to *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), for the proposition that there is a distinction between probable cause to believe that contraband is somewhere in a vehicle and probable cause to believe that contraband is located in a particular container in the vehicle. The appellant would have us find that the officer's probable cause extended only to the red shave bag, conclude that this finding dictates that the automobile exception does not apply, and rule that when a police officer knows that contraband is contained in a particular container that happens to be in a vehicle, the Fourth Amendment requires a search warrant.

In *State v. Bottelson*, 102 Idaho 90, 93, 625 P.2d 1093, 1096 (1981), we recognized that:

The rule of the automobile exception is that "the constitution does not require a search warrant ... when the police stop an automobile on the street or highway

because they have probable cause to believe it contains contraband or evidence of a crime." *Arkansas v. Sanders,* 442 U.S. at 760, 99 S.Ct. at 2591; *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

In addition, we recognized that "[a]lthough the automobile exception does not generally extend to the warrantless search of luggage within an automobile, *Arkansas v. Sanders, supra; United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the exception does include within its bounds the warrantless search of automobile trunks." *Bottelson,* 102 Idaho at 93, 625 P.2d at 1096.

In *California v. Acevedo,* — U.S. —, —, 111 S.Ct. 1982, 1989, 114 L.Ed.2d 619 (1991), the United States Supreme Court held that "the Fourth Amendment does not compel separate treatment for an automobile search that extends only to a container within the vehicle." Thus, the *Chadwick–Sanders* distinction between containers and cars no longer exists. Rather, the specifically established and well-delineated *Carroll* automobile exception to the warrant requirement controls: "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Acevedo,* — U.S. at —, 111 S.Ct. at 1991.

In this case, the officer's reasonable and articulable suspicion to stop appellant's vehicle ripened into probable cause as soon as the drug-detection dog alerted on the rear exterior of the vehicle.[3] Once the officers had probable cause, it was proper for them to search the automobile without a warrant. The fact that the contraband was contained in a particular container is irrelevant. The fact that the container was within an automobile controls, and the automobile exception applies. Therefore, the search and seizure complied with the requirements of the Fourth Amendment.

3. This is not a canine-sniff case. The appellant did not object at trial to the foundation laid

## THE DISTRICT JUDGE DID NOT ABUSE HIS DISCRETION IN RULING THAT APPELLANT MADE A KNOWING AND VOLUNTARY WAIVER OF HIS *MIRANDA* RIGHTS

Appellant contends that the totality of the circumstances surrounding the custodial interrogation of Gallegos by Agent Martinez show that the appellant could not have made a valid waiver. He points to the fact that Gallegos had received a limited grade school education in Mexico, that he speaks and reads no English, is unfamiliar with the American criminal justice system, and that he was not informed in detail by Martinez of the significance of the waiver.

The respondent contends that it met its burden of establishing, by a preponderance of the evidence, that appellant voluntarily talked with Martinez. It points to the fact that the INS *Miranda* form read and signed by Gallegos was written in Spanish, that Gallegos said he understood the form and had no questions, that all conversations were conducted in Spanish, and that except for appellant's reluctance to disclose the names of people he had met with in Idaho Falls, he freely responded to Martinez's questions.

We have recognized that the issue of voluntariness "must be resolved by examining the totality of the circumstances surrounding the statements to determine whether it is the product of a rational intellect and a free will." *State v. Mitchell,* 104 Idaho 493, 499, 660 P.2d 1336, 1342, *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). It is the duty of the district court to resolve the issue of voluntariness, and to determine if the prosecution has shown the statements to be admissible by a preponderance of the evidence. *State v. Dillon,* 93 Idaho 698, 709–10, 471 P.2d 553, 564–65 (1970), *cert. denied,* 401 U.S. 942, 91 S.Ct. 947, 28 L.Ed.2d 223 (1971). Based upon the totality of the circumstances, we cannot say the ruling of the district judge that the appellant made a

regarding the expertise and training of the dog.

knowing and voluntary waiver of his *Miranda* rights was error.

## CONVICTION FOR FAILURE TO AFFIX A DRUG STAMP

■ The appellant, Jaime Gallegos, was convicted of failure to affix a drug stamp, a violation of I.C. §§ 63–4205 and 4206(2). He was sentenced to a minimum term of three years. The appellant, in his notice of appeal, appealed from this judgment of conviction.

In *State v. Smith,* 120 Idaho 77, 813 P.2d 888 (1991), we declared the 1989 version of the Illegal Drug Stamp Tax Act to be unconstitutional, as violative of the Fifth Amendment. Gallegos was apprehended with cocaine on December 1, 1989, and the amended complaint was filed on December 15, 1989. The amended version of the Illegal Drug Stamp Tax Act was not in effect until March 27, 1990.

The appellant's conviction for failure to affix a drug stamp is vacated. In all other respects, the decision of the district court is affirmed.

BAKES, C.J., and BOYLE, JJ., concur.

BISTLINE, Justice, concurring in part and dissenting.

It is beyond peradventure that the majority is correct in holding that the conviction for failure to affix a drug stamp must be vacated pursuant to *State v. Smith,* 120 Idaho 77, 813 P.2d 888 (1991). The majority is not entitled to rely upon *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) to justify the search, and errs in doing so.

*Acevedo,* decided on May 30, 1991, overruled *Arkansas v. Sanders,* ·442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The search here occurred on December 1, 1989. At that time, pursuant to *Sanders,* a container inside an automobile could not be searched without a warrant, if the police only had probable cause to search the container (as opposed to probable cause to search the entire car). In *Sanders,* the police had probable cause to believe a suitcase contained marijuana. They watched

the defendant place the suitcase in the trunk of a taxi and allowed the taxi to be driven away. The police pursued the taxi, stopped it, opened up the trunk and searched the suitcase.

The State argued that the officers having probable cause to believe that illegal drugs were in the suitcase were entitled to make a warrantless search. The Supreme Court of the United States disagreed; it held that the search was invalid absent a warrant:

> In sum, we hold that the warrant requirement of the Fourth Amendment applies to luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, without endangering themselves or risking loss of evidence, lawfully have detained one suspected of criminal activity and detained his suitcase, *they should delay the search thereof until after judicial approval has been obtained.* In this way constitutional rights of suspects to prior judicial review of searches will be fully protected.

442 U.S. at 766, 99 S.Ct. at 2594 (emphasis added).

At the time of the hearing now in question, *Sanders* was in place, and cannot be ignored. Application of the *Sanders* holding would require suppression of the evidence discovered by the officers in rummaging through the red shaving kit.

The district court denied the motion to suppress relying upon *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross,* the Supreme Court upheld a search of an automobile where the police had probable cause to believe illegal drugs were somewhere in the trunk of the defendant's automobile. However, the Supreme Court was careful to distinguish that case from *Sanders* where the police only had probable cause to

search the luggage. The rationale behind the distinction being that if the police have probable cause to believe contraband is somewhere inside a car, they have the right to search the entire car without a warrant because "it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). In cases where the police have only probable cause to believe contraband is present inside a particular container, that container may be impounded, thus affording the police an opportunity to apply for a warrant. Such a warrant could have authorized the seizure and search of the red shaving kit, assuming of course that the police satisfied the magistrate that they had probable cause for the search. *Sanders*, 442 U.S. at 762, 99 S.Ct. at 2592.

Professor LaFave explains the *Ross* case as follows:

> Turning now to the scope of the *Ross* rule, it is important to stress that the Court did not overturn the *Chadwick–Sanders* rule. What this means is that if there is only probable cause to search a particular container in the vehicle but not probable cause to search the vehicle generally, as was true in those cases, *Ross* does not control and ... a warrant will be required to search the container, but not to seize it. (parenthetical remark and footnotes omitted)

3 W. LaFave, *Search and Seizure*, § 7.2(d), at 56 (2d ed. 1987).

Because probable cause was established by the police dog indicating to the officers that there was a controlled substance in the red shaving kit, the case here falls squarely into the *Sanders* rule. Thus, if the district court had correctly applied the controlling Supreme Court case to this case, the evidence would have been suppressed. Today, however, the majority, in relying on *Acevedo*, applies a rule which was not announced until eighteen months

after the search here was completed. Undoubtedly it was an inadvertence. The bar at large, and the trial lawyers specifically, are well aware of the crowded dockets of the two Idaho appellate courts, and the efforts of the latter to move out appellate decisions in an expeditious manner. It would not be self-demeaning were it to be conceded that there is no guarantee that appellate opinions, and the holdings therein expressed, are free of any error. For that reason, long before my time on the Court, a decision was made whereby the Court would welcome petitions for rehearing where involved counsel would have the opportunity to politely and forthrightly illustrate for the benefit of the Court where it may have omitted consideration of statutory law, case law precedent, and certain important evidentiary matters.

Had the search occurred after May 30, 1991, the case would be controlled by *Acevedo*, but the search took place on December 1, 1989. Thus, the exact question before this Court, and one as yet ignored by the majority, is whether a Supreme Court decision which overrules controlling precedent at the time of the occurrence at bar should be applied retroactively. The prospective or retroactive application of a decision is a discretionary determination of judicial policy made after balancing certain criteria. The Court must weigh:

1. The purposes of the new rule;
2. Reliance on prior decisions by the Court; and
3. The effect of the new rule on the administration of justice.

*State v. Whitman*, 96 Idaho 489, 491, 531 P.2d 579, 581 (1975).[4]

Today the majority errs, rather mightily in my view, by simply applying the *Acevedo* rule retroactively without one iota of analysis, or even an acknowledgement of the question. The Court has on previous occasions declined to apply Supreme Court precedent retroactively. *See e.g. State v. Martinez*, 92 Idaho 183, 186, 439 P.2d 691, 694 (1968) (applying *Escobedo v. Illinois*,

---

**4.** Of the Court membership as presently constituted, only Chief Justice Bakes was involved in     *Whitman*.

378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), but not *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to admissions made in 1965), *State v. West*, 92 Idaho 728, 728–29, 449 P.2d 474, 474–75 (1969) (refusing to apply either *Escobedo* or *Miranda* to a preliminary hearing held in 1963), *State v. Zamora*, 93 Idaho 625, 628, 469 P.2d 752, 755 (1970) (refusing to apply *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) to a 1968 search), *Smith v. State*, 94 Idaho 469, 473, 491 P.2d 733, 737 (1971) (holding that *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), is to be applied prospectively only), *Calkins v. May*, 97 Idaho 402, 404–05, 545 P.2d 1008, 1010–11 (1976) (refusing to apply *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), to a 1973 prison disciplinary hearing).

On the other hand, Supreme Court decisions have been applied retroactively. *State v. Lang*, 105 Idaho 683, 684–685, 672 P.2d 561, 562–63 (1983) (applying *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) to 1980 search, ignoring the views in the dissent of Bistline J.), *see State v. Schaffer*, 107 Idaho 812, 817–821, 693 P.2d 458, 463–67 (Ct.App.1984), (applying both *Gates* and *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), retroactively).

The astute reader may have already noticed a trend in our retroactivity decisions, as least where it concerns criminal procedure. It is only most recently that the Court has indulged in the questionable application of Supreme Court decisions retroactively, without pausing to consider the retroactivity question. In *State v. Card*, Idaho S.Ct. No. 18313, slip op. # 130 (filed Dec. 31, 1991), the majority applied *Payne v. Tennessee*, 498 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), retroactively. *Payne* overruled, in part, controlling precedent at the time of the defendant's sentencing hearing. Not one word was said by the majority about the propriety of applying *Payne* to the case even though it was undisputed a contrary rule was in effect at the time of the sentencing hearing. It is

thought, by at least this one member of the Court, that we should at least consider the question of retroactivity instead of issuing important decisions *sub silentio*, as though that was not at all an obstacle.

Turning now to the *Whitman* factors, the new rule announced in *Acevedo* does not serve an identifiable purpose. The High Court's rationale behind the overruling of *Sanders* was that, 1) the case was too confusing for courts and law enforcement, 2) the rule did not protect any significant privacy interest and 3) the rule impeded effective law enforcement. On the other hand, the dissent, lead by Justice Stevens, vociferously disagreed with and dissected all three of the majority's assertions. Neither side however, proved or disproved the majority's stated rationales for overruling *Sanders*, other than in the eyes of the beholder.

In the absence of a compelling reason to adopt the *Acevedo* opinion, it cannot be said with any assurance that the first *Whitman* factor favors this Court's retroactive application of this new rule of criminal procedure.

The second *Whitman* factor favors a prospective only application of *Acevedo*. Litigants should be able to rely upon controlling Supreme Court cases, as should the courts. If the trial court had properly applied the law, it would have suppressed the illegally seized evidence. To do so would not be the end of the world. Many are the decisions which have emanated from this Court which have held the State, and the defendants as well, accountable for staying within the bounds established by the Constitution of the United States, and equally so with the Constitution of the State of Idaho, as to both of which the members of this Court even now, and formerly as practicing attorneys, were solemnly sworn to uphold. The police should not be rewarded, nor Gallegos punished, for the district court's erroneous ruling or for the Supreme Court's inability to finally determine the parameters of Fourth Amendment protection. The majority punishes Gallegos because he had the misfortune of being brought before a judge who did not correct-

ly apply the law. That is no reason to treat Gallegos differently from other similarly situated defendants.

As to the third factor, there will not be an adverse effect on the administration of justice if *Acevedo* is applied prospectively only, as has always been my understanding is the proper course in such cases. Presumably, the police were not conducting illegal searches in the hope that *Sanders* would be overruled. If they were, that supplies yet another reason for according prospective application to *Acevedo*. As was recently said "it is not unjust to require the state and the trial court to adhere to controlling precedent *until* it is overruled. To the contrary, it is their sworn duty to do exactly that." *Card*, slip op. at p. 30 (Bistline, J. dissenting).

The search was illegal under *Sanders*, and, because it is not justifiably retroactively applicable, *Acevedo* should not be applied. No other theories of admissibility have been raised by the State. Because it is the State which had the burden of proving that the warrantless search fell within one of the exceptions to the warrant requirement, *State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981), and it has failed to do so, the challenged evidence should have been suppressed.

In sum, the majority has reached the correct conclusion as to the drug stamp conviction. The other conviction should also be reversed.

JOHNSON, Justice, concurring and dissenting.

I concur in all of the Court's opinion, except the part entitled "Conviction for Failure to Affix a Drug Stamp." This issue was not raised on appeal, and we should not address it.