**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41922**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Unpublished Opinion No. 452** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 31, 2015** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ROY ROLAND ARAIZA, SR.,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Roy Roland Araiza, Sr., appeals from his judgment of conviction for possession of a controlled substance. Specifically, he challenges the district court's denial of his motion to suppress. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In its written decision denying Araiza's motion to suppress, the district court made the following findings of fact, which are not disputed by Araiza on appeal:

> On the late evening of January 13, 2013, and into the early morning hours of January 14, 2013, the defendant was stopped on suspicion of operating a motor vehicle while under the influence of alcohol. Officer Kevin Loosli responded with his drug dog. However, prior to running his dog around the car and while Araiza was performing field sobriety tests with another officer, Officer Loosli noticed a yellow pill imprinted with the number "203" on the driver's seat.

1

Officer Loosli testified that, in his experience as a police officer, the pill resembled a prescription pill and not an over-the-counter pill. Officer Loosli also testified that people who have prescriptions generally keep their pills in the prescription bottle while those individuals who possess prescription pills illegally generally do not. Based on Officer Loosli's belief that the pill was in Araiza's possession illegally, he retrieved the pill without asking permission from Araiza. The pill was confirmed to be Oxycodone by a drug identification search on the Internet. Araiza never produced a prescription for the pill.

Law enforcement then searched the vehicle and found methamphetamine.

Araiza was charged with two counts of possession of a controlled substance, Idaho Code § 37-2732(c)(1), one count for the methamphetamine and one count for the Oxycodone. The State later amended the information to allege that Araiza was a persistent violator.

Araiza filed a motion to suppress, contending Officer Loosli's search to obtain the pill and subsequent search of the car were conducted without probable cause or a valid consent or waiver. At the hearing on the motion, Araiza's parole officer testified that at the time of the stop, Araiza was on parole and as a condition of his parole, had agreed to the following provision:

The defendant shall consent to the search of his/her person, residence, vehicle, personal property, and other real property or structures owned or leased by the defendant or for which the defendant is the controlling authority conducted by any agent of the Idaho Dept[.] of Correction or law enforcement officer. The defendant waives his/her Fourth Amendment Rights concerning searches.

The district court denied the motion to suppress, determining the search was permitted by Araiza's probation agreement or, alternatively, that Officer Loosli lawfully seized the pill because it was contraband in plain view and the subsequent identification that it was a controlled substance available only by prescription provided the requisite probable cause to search the entire vehicle. Pursuant to a plea agreement, Araiza entered a conditional *Alford*[1] plea to possession of methamphetamine, preserving his right to appeal the denial of his motion to suppress. He now appeals.

## II.

## ANALYSIS

Araiza contends the district court erred by denying his motion to suppress because the officer's act of retrieving the pill from the car was a search not permissible under either the plain view doctrine or Araiza's parole agreement, and the subsequent search of his vehicle was not

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

2

permitted by the parole agreement or supported by probable cause. Specifically, he argues the pill did not have an immediately apparent connection to criminal activity and so the plain view doctrine was not applicable. In regard to his parole agreement, he argues that the phrase "shall consent" required that he be asked for consent before the search was conducted and that by the plain language of the agreement, he waived only his Fourth Amendment rights regarding searches and did not waive his corresponding rights under the Idaho Constitution. Finally, he argues that even after Officer Loosli identified the pill as Oxycodone, he did not have the requisite probable cause to search the vehicle because the officer did not know whether Araiza had a valid prescription for the medication.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement in the Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution. *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993); *State v. Cruz*, 144 Idaho 906, 908, 174 P.3d 876, 878 (Ct. App. 2007). However, if officers are lawfully on premises, whether in response to an exigency or under some other warrant exception, and see contraband or other evidence of criminal activity in plain view, they may seize the evidence without first obtaining a warrant. *Horton v. California*, 496 U.S. 128, 133 (1990); *State v. Claiborne*, 120 Idaho 581, 586, 818 P.2d 285, 290 (1991); *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002). For the plain view doctrine to apply two conditions must be met: (1) there must be a lawful intrusion or the officer must otherwise properly be in position to view a particular area, and (2) it must be immediately apparent that items viewed are contraband or evidence of a crime. *Horton*, 496 U.S. at 135-36; *Buterbaugh*, 138 Idaho at 99, 57 P.3d at 810. The second element of the plain view doctrine is met if the officer has probable cause to believe the item seized is

3

contraband or evidence of crime. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 66 (1992); *Texas v. Brown*, 460 U.S. 730, 741-42 (1983); *Buterbaugh*, 138 Idaho at 99, 57 P.3d at 810. This probable cause determination may be based on the surrounding facts and circumstances, and an officer may draw reasonable inferences based on his training and experience in determining whether a connection exists. *Buterbaugh*, 138 Idaho at 99, 57 P.3d at 810.

The automobile exception allows police to search an automobile and the containers within it when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991); *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). Probable cause is a flexible, commonsense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Brown*, 460 U.S. at 742; *State v. Newman*, 149 Idaho 596, 599-600, 237 P.3d 1222, 1225-26 (Ct. App. 2010); *Gibson*, 141 Idaho at 281, 108 P.3d at 428. Probable cause does not require an actual showing of criminal activity, but only the probability or substantial chance of such activity. *Illinois v. Gates,* 462 U.S. 213, 243-44 n.13 (1983); *Newman*, 149 Idaho at 600, 237 P.3d at 1226. The facts known to the officers must be judged in accordance with the factual and practical considerations of everyday life on which reasonable and prudent people act. *Gates*, 462 U.S. at 231; *Newman*, 149 Idaho at 600, 237 P.3d at 1226. In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account. *State v. Veneroso*, 138 Idaho 925, 929, 71 P.3d 1072, 1076 (Ct. App. 2003).

On appeal, Araiza argues there was no evidence making it immediately apparent to the officer that the pill was contraband. Specifically, he contends that Officer Loosli had nothing more than a hunch that the pill was a prescription medication as he had no knowledge as to what medication it actually was. Further, Araiza argues that even if it was a prescription medication, the mere possession of a prescription medication is not illegal; rather, it is only "contraband" if one does not have a prescription, which Officer Loosli clearly could not ascertain by merely viewing the pill.

As mentioned above, however, in addition to applying to circumstances where it is immediately apparent that items viewed are contraband, the plain view doctrine also applies where an officer has probable cause to believe the item seized is evidence of a crime. *Buterbaugh*, 138 Idaho at 99, 57 P.3d at 810. This was the circumstance here. Officer Loosli

4

knew Araiza had been stopped under suspicion of driving under the influence and was being investigated for that crime. With this knowledge, Officer Loosli's spotting of a loose pill, which he believed to be a prescription medication,[2] took on new significance. Additionally, given the crime for which Araiza was being investigated, the pill need not have even been a prescription medication and whether Araiza had a prescription was irrelevant; the presence of any type of medication capable of decreasing a person's ability to drive would have been possible evidence of the crime of driving under the influence. *See* I.C. § 18-8004(a) ("It is unlawful for any person who is under the influence of alcohol, drugs or *any other intoxicating substances*, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08 . . . to drive or be in actual physical control of a motor vehicle within this state." (emphasis added)). Under these circumstances, there was a practical, nontechnical probability that the pill was incriminating evidence, *see Newman*, 149 Idaho at 599-600, 237 P.3d at 1225-26, such that Officer Loosli could retrieve the pill under the plain view doctrine.

Next, Araiza contends that even after Officer Loosli retrieved the pill and identified it as Oxycodone, a prescription medication, this fact alone did not give Officer Loosli probable cause to then search the entire vehicle. Not only did the officer not ask Araiza whether he had a valid prescription but, Araiza argues, "[u]nder the district court's analysis, an officer could see a blood pressure or cholesterol pill in a vehicle and, without more, have probable cause to search the vehicle."

We disagree. In the context of a DUI investigation, Officer Loosli positively identified the pill as being Oxycodone, a well-known controlled substance with intoxicating effects (thus distinguishing it from heart or cholesterol medicine). Further, Officer Loosli testified that based on his experience, when individuals illegally possess prescription pills, the pills are loose or in

---

[2]     Specifically in this regard, Officer Loosli testified that over the course of his duties as a police officer, he came into contact with various pills and had developed a familiarity with common over-the-counter medications. He stated that the pill he saw in Araiza's vehicle was not consistent with being a common nonprescription medication, but appeared to be more consistent with prescription medications. Specifically, Officer Loosli testified he believed the pill looked like a prescription pill because typically prescription pills have "longer imprints" and "finer detail to the lettering themselves" whereas over-the-counter pills are often "screen printed" or have shorter, "larger print." He also testified that in his experience as a police officer, those persons found carrying pills either loose or in an unmarked pill bottle typically did not have a prescription for that medication.

5

containers that do not have a prescription on them whereas, when pills are possessed under a prescription, those pills are usually in or near a prescription bottle. Under the specific circumstances of this case, Officer Loosli had probable cause to believe that the Oxycodone was illegally possessed and/or the evidence of a crime and probable cause to believe the vehicle may contain additional contraband such that the search of the rest of the vehicle was valid under the automobile exception. Accordingly, the district court's denial of Araiza's motion to suppress is affirmed.

Judge GRATTON **CONCURS**.

Judge LANSING **CONCURS IN THE RESULT.**